WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Edward Vincent Ray, Jr., | No. CV-13-00088-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| James MacDonald, et al., | |
| Defendants. | |

Pending before the Court is Defendants James MacDonald, Gary L. Ralston, Donald Justus Jr., and Ashlee Pratt's Second Motion for Summary Judgment. (Doc. 173). For the following reasons, the Court will deny the motion.

## BACKGROUND

In December 2017, this Court issued an order that granted Defendants' Motion for Summary Judgment in part. Specifically, the Court granted the motion for Defendant Pratt as to Plaintiff's First Amendment claims, and for Defendant Justus as to all claims. (Doc. 96). In May 2018, the Court subsequently reinstated Defendant Justus because new evidence emerged that he was involved with processing inmates' letters during the relevant time period. (Doc. 142). After additional discovery was conducted, Defendants filed a second Motion for Summary Judgment that raises many of the same arguments as their first. Because issues of material fact remain, the Court will deny the motion.

**I.  Legal Standard**

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

**II. Analysis**

**A. Factual Background**

The four named Defendants in this matter worked for the private-prison corporation CoreCivic at the La Palma Correctional Center ("La Palma"), in Eloy, Arizona. Defendant James MacDonald served as the Warden of the facility, Defendant Gary Ralston was the mailroom supervisor, and Defendants Ashlee Pratt and Donald Justus worked as mailroom clerks.

In 2007, Plaintiff Edward Vincent Ray Jr. ("Ray") and his son ("Ray III") were convicted of some of the same crimes in the Northern District of California. Following those convictions, they were both incarcerated at the same facility in Oklahoma. There, the California Department of Corrections and Rehabilitation authorized correspondence between Defendant and his son via a Form 1074 ("2009 Form"). In August 2012, Plaintiff's son was transferred to La Palma. Two months later, Plaintiff was also transferred to La Palma. As with the Oklahoma facility, inmates incarcerated at La Palma are subject to the California Code of Regulations and must obtain a 1074 form to correspond with

other inmates. Ray and Ray III were able to correspond freely until Ray was transferred to La Palma.

For the first few weeks at La Palma, Ray did not realize that his mail to his son was being withheld and speculated that the mailroom may have mixed up their mail because they had the same name. On November 22, Ray wrote to the mailroom to clarify that he and his son "had an approved CDCR 1074 form to write to each other." (Doc. 179 Ex. 14). Ray began to worry for his son's safety and did not received any correspondence from Ray III. (Doc. 179, Ex. 3).

On December 1, Ray spoke with his daughter on the phone, and she informed Ray that his son had sent letters to him, and that his son had not received his letters. Four days later, Ray submitted another form to the mailroom, complaining about the seizure of his mail, and noting that he had prior approval to send his son mail. Two days after that, Ray received returned letters that he had written to his son, along with an empty envelope that was addressed to the mailroom staff. Becoming increasingly frustrated with the staff, Ray sent a third form to the mailroom pleading that they stop withholding his mail, noting that he was trying to communicate with his son about their pending habeas petitions, and claiming the guards were "interfering with my active pending legal case that also involves my son/co-defendant." (Doc. 179, Ex. 28). Defendant Ralston simply responded, "Submit a 1074 for Approval." (*Id.*). So, Ray then submitted a second 1074 Form for approval. (Doc. 179, Ex. 1).

A few days later, Ray discussed the mail seizure issue with Warden MacDonald in person. Ray states that he showed Warden MacDonald his 2009 Form that approved contact between him and his son. Warden MacDonald told Ray to file a grievance, so Ray did on December 10. In that grievance, Ray attached his 2009 Form, and sent copies to both Warden MacDonald and the mailroom. Nine days later, Ray had not received a response from Warden MacDonald, so he sent an additional form requesting a response. In that form, Ray again noted that he and his son "were already approved to correspond via CDCR 1074 form." (Doc. 179, Ex. 35). On January 8, Ray again pleaded with Defendant

1 MacDonald to allow him to correspond with his son. On the same day, Ray submitted a form to Ralston, notifying him that Ray would name him in a lawsuit unless he allowed him to send letters to his son. Ralston responded, stating that he "already responded to the issue" and claimed that Ray was "violating our correspondence policy." Ralston does not now recall what policy Ray was violating. (Doc. 179 Ex. 11, ¶ 21).

Weeks later, MacDonald responded to Ray's December 19 form, stating that Ray was violating prison policy by "inserting [his] son's mail into [his]" and if he continued to do so, Ray would "lose [his] privilege of inmate to inmate correspondence." (Doc. 179 Ex. 35). But despite this warning, Warden MacDonald never revoked Ray's privilege to write to another inmate. (Doc. 179 Ex. 4). MacDonald testified that he made an inquiry about Ray's complaint but did not look in his file to see if there was a 1074 Form, did not instruct his staff to look in his file, and did not call CDCR to see if Ray had a form on file. (*Id.*). The mailroom stopped seizing mail between the two men on January 30, 2013.

In February, Plaintiff submitted an additional grievance form alleging that the Defendants violated his constitutional rights because they seized and stopped mail to his son. Again, Plaintiff attached his 2009 Form. After additional proceedings, it was ultimately determined that an error was made by the staff. Plaintiff maintains that there were at least 45 letters that were seized during this period, and many were never returned to him.

During this entire period, the mailroom Defendants (Ralston, Justus, Pratt), now claim that they were directed initially to withhold Ray's outgoing mail until he submitted a *new* 1074 Form by Mr. Beguhl, a California Department of Corrections representative. But this contradicts each of the mailroom Defendant's prior testimony that stated they would have allowed Ray to correspond with his son if they had known about the 2009 Form. Notably, Ray and Ray III continued to correspond without any issues after being transferred multiple times to other facilities, and have not been required to request an additional 1074 Form. (Doc. 179 at 18).

/ / /

### B. First Amendment

In an as-applied First Amendment challenge to a decision to withhold a prisoner's mail, the Court must determine whether "applying the regulation to that speech . . . was reasonably related to the legitimate penological interest asserted by the prison." *Hargis v. Foster*, 312 F.3d 404, 410 (9th Cir. 2002). Of course, withholding mail in general can help further legitimate penological interests, such as preventing inmates from exchanging contraband or conspiring with one another. But Ray is not challenging the facial validity of the 1074 Form process or the California Code of Regulations. Rather, Ray is arguing that even though he complied with the California Code of Regulations, the Defendants withheld his mail without any legitimate reason.

Defendants here note that generally inmates try to send and receive contraband, which is the rationale underlying the Form 1074 process. But Defendants do not claim that they withheld Plaintiff's correspondence because of a potential issue with contraband. Indeed, Defendants do not even articulate a consistent rationale for why Ray's mail was withheld.

Defendants Ralston and Justus now claim that they were instructed by Mr. Beguhl to withhold Plaintiff's mail until he obtained a *new* 1074 form. Because they were simply following Mr. Beguhl's instructions, they argue that their decision to withhold Ray's mail was reasonably related to a legitimate penological interest. But that statement is contradicted by their previous testimony, where each of the mailroom Defendants stated that, had they seen Defendant's 2009 Form, they would have processed his mail. Because issues of fact remain for each Defendant, the Motion for Summary Judgment will be denied.

#### 1. Defendant MacDonald

As with the previous motion for summary judgment, there remain disputed issues of material fact as to whether Plaintiff showed Defendant MacDonald an approved 2009 Form, whether he failed to intervene despite his knowledge that Plaintiff had prior approval to correspond with his son, and whether Defendant MacDonald incorrectly claimed that

Plaintiff was violating prison policy. (Doc. 96 at 14). Accordingly, summary judgment will be denied as to Defendant MacDonald.

### 2. Defendant Ralston

At times during this proceeding, Ralston has testified that he did look in Ray's file but did not see a 1074 Form (Doc. 179 Ex. 11, ¶ 11). Ralston later stated he did not look in Ray's file because he lacked access to it and did not ask anyone else to look at Ray's file. (Doc. 179, Ex. 5 at 86:10–14, 121:1–4, 87:14–21). Defendant MacDonald has also testified that mailroom staff routinely check inmates' files for 1074 Forms, that it is "part of their job" and "how they perform their duties." (Doc. 179, Ex. 4 83:23–84:17). Whether Defendant Ralston knew that Plaintiff had a previously approved 1074 Form is a disputed issue of material fact that must be submitted to the jury.

### 3. Defendant Justus

There are similar disputed issues of material fact as to whether Defendant Justus knew that Ray and Ray III had prior approval to correspond. Defendant Justus's name repeatedly appears on a mail log showing that he logged letters to Ray III while Ray's mail was being withheld. Justus testified at points that he never delayed or seized Ray's mail, and that "Plaintiff never showed me or sent me his previously approved form from 2009." (Doc. 179, ¶ 59). But in March 2013, shortly after the disputed time frame in this case, he noted that he knew that "the inmates had prior approval from another facility," and that he seized their mail regardless. Defendant Justus also sent Ray III a notice in November 2012 that explained that Justus had seized a birthday card Ray III sent to his father. (Doc. 179 Ex. 19).

### B. Due Process Claim

This Court has already held that prisoners have a liberty interest in sending and receiving mail, and that they are entitled to some procedural due process when they are deprived of that mail. (Doc. 96 at 9) (citing *Krug v. Lutz*, 329 F.3d 692, 696–97 (9th Cir. 2003) (prisoner "has a liberty interest in the receipt of his subscription mailings sufficient to trigger procedural due process guarantees"); *Procunier v. Martinez*, 416 US. 396, 418–

19 (1974), *overruled on other grounds by Thornburgh v. Abbot*, 490 U.S. 401 (1989).

Generally, if a prison staff seizes a prisoner's mail, three baseline protections must be afforded: (1) notice to the inmate of the rejection, (2) a reasonable opportunity to appeal the rejection, and (3) review by an independent official. *See Martinez*, 416 US. at 418–19; *Krug*, 329 F.3d at 697 (independent, two-level review); *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir. 1999) (notice).

As with their first motion for summary judgment, Defendants again fail to provide sufficient evidence that Plaintiff was informed his mail was being withheld and the reasons why it was withheld. Initially, there was a period of weeks where Plaintiff believed that his mail was either lost or just delayed to his son before he began to suspect that it was being withheld. Only after discussing the issue with his daughter did he realize that his mail was not being received by Ray III. Ray then repeatedly submitted forms informing Defendants that he believed his mail was being wrongfully taken. It is unclear that Ray ever received notice explaining why his mail was being withheld.

Defendants now assert that Ray received a post-it note from Ms. Pratt that explained he needed to submit a new 1074 Form. (Doc. 174, ¶ 85). But it is unclear from her testimony whether she is saying she would have notified Ray under normal circumstances, or that she actually notified Ray. (Doc. 179, Ex. 10 at 56:2–1). Whether Defendant was ever given notice that his mail was being withheld is a disputed issue of material fact that must go to the jury. If Defendant did not receive adequate notice as to why his mail was being withheld, it is not clear that he could have had a reasonable opportunity to appeal that decision.

As for whether this incident was a mere mistake, Plaintiff Ray previously submitted two declarations from former prisoners of La Palma who claim their mail was similarly processed without notice. (Doc. 69 at 3–4). Taking this evidence in the light most favorable to Ray, a jury could conclude that there was a custom of depriving inmates of their mail without proper notice.

/ / /

### C. Emotional Distress Claim

Ray has presented enough evidence to survive summary judgment on his emotional distress claim. *See Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (noting that no physical injury is necessary to recover damages on a First Amendment emotional distress claim). After arriving at La Palma, Ray was unable to communicate with his son for an entire month and began to worry for his safety. (Doc. 179, Ex. 3). Ray also testified that he felt sick, had headaches, and was immensely worried when he could not contact his son. (Doc. 179, Ex. 1, at 130:16–132:24). This is evidence from which a jury could find emotional distress damages.

### D. Punitive Damages

If a jury found that Defendants seized Ray's mail for a three-month period without a legitimate reason for doing so, despite Ray's multiple grievances and attempts to inform Defendants that he had prior approval, the jury could infer the requisite intent for punitive damages. Additionally, Defendants have changed their explanation for why they seized Ray's mail, which can in some instances demonstrate ill-intent. *See Alla v. Verkay*, 979 F.Supp.2d 349, 373 (E.D.N.Y. 2013); *Milfort v. Prevete*, 3 F.Supp.3d 14, 23–24 (E.D.N.Y. 2014).

## CONCLUSION

Because issues of material fact remain as to each of Plaintiff's claims, the Motion for Summary Judgment is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 173) is **DENIED.**

**Dated this 21st day of February, 2019.**

_____
G. Murray Snow
Chief United States District Judge